UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUCIAN BEBCHUK,

Plaintiff,

-against-

ELECTRONIC ARTS, INCORPORATED,

Defendant.

CV 08-3716 (AKH)
Electronically Filed

**ELECTRONIC ARTS INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS**

Jonathan Rosenberg
William J. Sushon
Brendan J. Dowd
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
Telephone:    (212) 326-2000
Facsimile:    (212) 326-2061
jrosenberg@omm.com
wsushon@omm.com
bdowd@omm.com

May 30, 2008                          *Attorneys for Electronic Arts Inc. ("EA")*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND .................................................................................................... 4

ARGUMENT ............................................................................................................................. 9

I.  EA MAY EXCLUDE THE PROPOSAL UNDER RULE 14a-8(i)(3)
    BECAUSE IT IS CONTRARY TO THE PROXY RULES ............................... 10

    A.  Rule 14a-8 Is the Exclusive Procedure for Shareholder Access to
        an Issuer's Proxy Materials .................................................................... 10

    B.  The Proposal Is Contrary to Rule 14a-8 Because It Would Displace
        the SEC's Exclusive Authority to Regulate Access to EA's Proxy
        Machinery ............................................................................................... 14

II. EA MAY EXCLUDE THE PROPOSAL BECAUSE IT IS CONTRARY
    TO RULE 14a-8(i)'s SPECIFIC REQUIREMENTS ...................................... 15

    A.  The Proposal Is Squarely Contrary to the SEC's 2007
        Amendments to Rule 14a-8(i)(8) ........................................................... 15

    B.  The Proposal Would Disrupt the SEC's Careful Balance between
        Shareholder Access to the Corporate Proxy and Avoiding Financial
        Waste ....................................................................................................... 18

III. EA MAY ALSO EXCLUDE THE PROPOSAL BECAUSE IT IS
     VAGUE AND INDEFINITE .......................................................................... 20

    A.  The Proposal's Interaction with Rule 14a-8 Is Ambiguous .................... 21

    B.  The Proposal Fails to Tell Shareholders or EA What Future
        Actions or Measures the Proposal Requires ............................................ 22

CONCLUSION ......................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page**

## CASES

*Am. Fed'n of State County and Mun. Employees, Employees Pension Plan v.*
*American Int'l Group, Inc.,*
462 F.3d 121 (2d Cir. 2006).................................................................. 5, 6, 16

*Bell Atlantic v. Twombly*, 127 S. Ct. 1955 (2007) ....................................... 10

*Chevron, Inc. v. Natural Resources Defense Council,*
467 U.S. 837 (1984)................................................................................ 20

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) ..................... 11

*Feige v. RCN Corp.*, No. 07 Civ. 8539 (AKH), 2008 WL 906070
(S.D.N.Y. April 3, 2008)......................................................................... 10

*New York City Employees' Ret. Sys. v. SEC,*
45 F.3d 7 (2d Cir. 1995)......................................................................... 12

*New York City Employees' Ret. Sys. v. Brunswick Corp.,*
789 F. Supp. 144 (S.D.N.Y. 1992) ......................................................... 20

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.,*
128 S. Ct. 761 (2008)............................................................................. 14

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000)......................................... 10

*United States v. Locke,*
529 U.S. 89 (2000).................................................................................. 11

## STATUTES & LEGISLATIVE HISTORY

15 U.S.C. § 78n........................................................................................ 9

S. Rep. No. 73-1455, 73d Cong., 2d Sess. 77 (1934) ................................. 19

## SEC RULES AND RELATED MATERIALS

Rule 14a-8, 17 C.F.R. § 240.14a-8 .....................................................Passim

Adoption of Amendments Relating to Proposals by Security Holders, Exchange
Act Release No. 34-12999, [1976-1977 Transfer Binder],
Fed. Sec. L. Rep. ¶ 80,812 (November 22, 1976) ................................. 18

**TABLE OF AUTHORITIES**

Page

Amendments to Rule 14a-8, Exchange Act Release No. 34-20091,
      Fed. Sec. L. Rep. ¶ 83,417 (Aug. 16, 1983) ........................................................... 13

Amendments to Rules on Shareholder Proposals,
      Exchange Act Release No. 34-39093,
      Fed. Sec. L. Rep. (CCH) ¶ 85,961 (Sept. 18, 1997) ................................................ 14

Amendments to Rules on Shareholder Proposals,
      Exchange Act Release No. 34-40018,
      Fed. Sec. L. Rep. (CCH) ¶ 86,018 (May 21, 1998) ................................................. 14

E*Trade Financial Corp.,  SEC No-Action Letter,
      CCH Securities Internet Library (Feb. 11, 2008) ................................................... 17

Fuqua Indus., Inc., SEC No-Action Letter,
      CCH Securities Internet Library (March 12, 1991) ................................................ 23

JP Morgan Chase & Co., SEC No-Action Letter,
      CCH Securities Internet Library (Feb. 11, 2008) ................................................... 17

Proposed Amendments to Rule 14a-8,
      Exchange Act Release No. 12598 [1976-1977 Transfer Binder]
      Fed. Sec. L. Rep. (CCH) ¶ 80, 634 (July 7, 1976) ..................................... 10, 18, 22

Proposed Amendments to Rule 14a-8,
      Exchange Act Release 34-19135,
      Fed. Sec. L.Rep. (CCH) ¶ 83,262 (October 14, 1982) ............................................ 13

Shareholder Proposals Relating to the Election of Directors,
      Exchange Act Release No. 34-56914,
      Fed. Sec. L. Rep. (CCH) ¶ 88,023 (Dec. 6, 2007) ............................................. 6, 16

Staff Legal Bulletin No. 14,
      Fed. Sec. L. Rep. (CCH) ¶  60,014  (July 13, 2001) ......................................... 12, 23

Staff Legal Bulletin No. 14B,
      Fed. Sec. L. Rep. (CCH) ¶ 60, 014B (Sept. 15, 2004) ........................................... 20

State Street Corporation, SEC No-Action Letter,
      CCH Securities Internet Library (Feb. 3, 2004)  ................................................... 11

The Bear Stearns Companies Inc.,  SEC No-Action Letter,
      CCH Securities Internet Library (Feb. 11, 2008) ................................................... 17

## PRELIMINARY STATEMENT

This case is about Plaintiff Lucian Bebchuk's dissatisfaction with the federal government's comprehensive framework for regulating shareholder proxy solicitations, and his improper attempt to force Electronic Arts Inc. ("EA" or the "Company") to opt out of that framework to further his own shareholder activist agenda. His complaint alleges that Securities and Exchange Commission Rule 14a-8 requires EA to include his proposal (the "Proposal") in its proxy materials for the Company's upcoming annual meeting. That Proposal would require EA to submit for shareholder vote virtually any change to its bylaws that a 5% shareholder might propose in the future. The complaint fails to state a claim for at least three independent reasons:

- The Proposal would conscript EA into an alternative scheme to the SEC's exclusive proxy solicitation framework, and is therefore "contrary to" the proxy rules under Rule 14a-8(i)(3).

- The SEC proxy rules grant EA the discretion to exclude shareholder proposals relating to any of the numerous categories that Rule 14a-8(i) enumerates. Because the Proposal would effectively eliminate that discretion, EA may exclude it.

- The Proposal is also "contrary to" the proxy rules, and thus excludable under Rule 14a-8(i)(3), because its vague and indefinite framework fails to inform EA and its shareholders what would be required of them.

The complaint therefore should be dismissed.

*First*, Rule 14a-8(i)(3) permits EA to exclude proposals, like Plaintiff's, that would establish an alternative scheme for determining which shareholder proposals must be included in the corporate proxy materials and which may be excluded. The SEC enacted Rule 14a-8 to regulate shareholder access to an issuer's proxy solicitation materials. The Rule's many provisions strike a balance between shareholders' interests in access to an issuer's proxy and an issuer's interest in efficiency and responsible governance. As part of that balance, the Rule

prescribes those proposals that a company must include in, and those that it has the discretion to exclude from, its proxy materials.

And that regime is exclusive—the SEC has made clear time and again that issuers cannot opt out of its regulatory framework. In 1982 and 1983, for example, the SEC considered amending the proxy rules to allow issuers to establish their own procedures for granting access to their proxies. After careful consideration, however, the SEC rejected those amendments, concluding that its existing rules—specifically, Rule 14a-8—struck the proper balance between individual shareholder-proponents' and issuers' respective interests. The SEC reaffirmed that stance in 1998, when it rejected an approach that would have empowered companies to adopt their own proxy-access procedures. And in 2004, the SEC agreed with an issuer's decision under Rule 14a-8(i)(3) to exclude a shareholder proposal that would have created an alternative scheme to Rule 14a-8.

The Proposal is a bald attempt to end-run the SEC's rulemaking determination. Requiring inclusion of the Proposal in EA's proxy would effectively empower EA's shareholders to require a company-specific framework for Rule 14a-8's shareholder proposal process. The result would be one set of proxy rules applying to EA (and any other company in Plaintiff's sights), while Rule 14a-8 would continue governing the rest of corporate America. The Proposal is thus abhorrent to the SEC's carefully balanced regulatory regime, and is plainly contrary to the spirit and purpose of Rule 14a-8. EA therefore has the discretion under Rule 14a-8(i)(3) to exclude the Proposal from its proxy materials.

*Second*, the Proposal is equally contrary to Rule 14a-8(i)'s exclusionary categories, under which issuers have broad discretion to reject proposals that relate to specifically enumerated subject matters. The Proposal conflicts most sharply with Rule 14a-8(i)'s exclusionary

categories in the area of director elections. The SEC has stated clearly that issuers have broad power under Rule 14a-8(i)(8) to exclude such proposals. As recently as 2007, the SEC amended Rule 14a-8(i)(8) to make clear that issuers may exclude not only proposals "relat[ing] to an election for membership on the company's board," but also proposals relating to "procedures" for board nominations or elections. It passed that amendment in response to a 2006 Second Circuit decision that narrowly construed Rule 14a-8(i)'s then-existing election exclusion provision. Plaintiff tried to persuade the SEC not to pass the 2007 amendment, arguing that shareholders should have the power to fashion director-election procedures. But the SEC rejected his policy arguments.

Now, Plaintiff is trying to bypass the amended Rule 14a-8(i)(8). If his Proposal were implemented, EA would lose its power under that Rule to exclude shareholder proposals relating to director elections. To illustrate, if EA were required to include the Proposal in this year's proxy and the bylaw change were implemented, then the next year, a shareholder could require EA to include in its proxy materials a bylaw amendment proposal that would require EA to include shareholder nominees in its proxy. The Proposal is therefore contrary to Rule 14a-8(i)(8), and EA has the right to exclude it.

Adopting the Proposal would also compel EA to include in its future proxy materials proposals that are contrary to other Rule 14a-8(i) exclusionary categories. Contrary to Rule 14a-8's express terms, EA would be forced to include, among other things, proposals that directly compete with the board's own proposals (Rule 14a-8(i)(9)), that the shareholders have rejected in the past (Rule 14a-8(i)(12)), that pertain to policy or governance matters that the company has substantially implemented (Rule 14a-8(i)(10)), or that pertain to a shareholder's

personal grievance with the company (Rule 14a-8(i)(4)).  EA therefore has the discretion under Rule 14a-8(i) to exclude the Proposal.

*Third*, Rule 14a-8(i)(3)'s "contrary to" the SEC's proxy rules provision also allows an issuer to exclude shareholder proposals that are inherently vague or indefinite.  The Proposal suffers from that defect because neither EA nor its shareholders would know what specific actions the Proposal requires.  That uncertainty stems from Proposal's haphazard adoption of some (but by no means all) of Rule 14a-8's procedural requirements.  This leaves EA and its shareholders to guess whether certain Rule 14a-8 obligations would continue to apply.  It is not clear, for example, whether the proxy rules' notice and cure provisions—safeguards that provide shareholder-proponents with an opportunity to cure procedural defects in their proposals—would still apply.  Thus, Rule 14a-8(i)(3) permits EA to exclude this open-ended, uncertain, and indeterminate Proposal from its proxy materials.

## FACTUAL BACKGROUND

### A.    The Parties

EA, a Delaware corporation based in Redwood City, California, is the world's leading interactive entertainment software company.  Founded in 1982, the company develops, publishes, and distributes interactive software worldwide for videogame systems, personal computers, cellular handsets, and the Internet.  EA's titles are known for their quality, innovation, imagination, immersive pull, and intuitive game play.  The company markets its products under four brand names: EA, EA SPORTS, EA SPORTS BIG, and POGO and some of EA's well known franchises include *Madden NFL*, *Tiger Woods PGA Tour*, *NBA Live*, *FIFA*,

*Harry Potter*, and *The Sims.* In fiscal 2007, EA posted revenue of $3.09 billion and had 24 titles that sold more than one million copies.[1]

Plaintiff Lucian Bebchuk is a professor at Harvard Law School. (Compl. ¶ 8.) He has written extensively concerning director election processes, advocating unfettered shareholder access to the corporate proxy for contested board elections. *See, e.g., The Myth of the Shareholder Franchise*, 93 Va. L. Rev. 675 (2007); *The Case for Shareholder Access to the Ballot*, 59 Bus. Law. 43 (2003). This philosophy, of course, squarely contradicts SEC Rule 14a-8, which allows corporations to exclude from their proxy materials shareholder proposals concerning both contested elections and the processes by which contested elections may proceed. 17 C.F.R. § 240.14a-8(i)(8) (allowing the issuer to exclude a shareholder proposal "[i]f the proposal relates to a nomination or an election for membership on a board of directors . . . or a procedure for such nomination or election").

In addition to his articles advocating a sea change in the proxy rules, Plaintiff also has submitted amicus briefs supporting litigants that have sought access to issuer proxies. For example, in *Am. Fed'n of State, County and Mun. Employees, Employees Pension Plan v. Am. Int'l Group, Inc.*, ("*AIG*"),[2] he submitted an amicus brief urging the court to permit shareholders to propose bylaw amendments that would require companies to include dissident shareholders' director nominees on the issuer's proxy.[3] While the SEC submitted an amicus brief opposing Plaintiff's position, the Second Circuit found more persuasive an SEC interpretation from a 1976

---

[1]    Electronic Arts Inc., Annual Report (Form 10-K) (May 29, 2007) (available at www.sec.gov/Archives/edgar/data/712515/000095013407012528/f29286e10vk.htm). (Excerpts attached to the Declaration of Brendan J. Dowd ("Dowd Decl."), Ex. A.)

[2]    462 F.3d 121 (2d Cir. 2006).

[3]    Amicus Curiae Brief for Harvard Law School Professors, Lucian Bebchuk *et al.*, *AIG*, 462 F.3d 121 (2d Cir. 2006). (Dowd Decl., Ex. B.)

Release that stated: "with respect to corporate elections, [] Rule 14a-8 is not the proper means for conducting campaigns or effecting reforms in elections of that nature [*i.e.*, 'corporate, political or other elections to office'], since other proxy rules, including Rule 14a-11, are applicable thereto."[4] Accordingly, the Second Circuit held that then-Rule 14a-8(i)(8) allowed companies to exclude only proposals concerning a contested election itself, and not procedures for future contested elections.

In December 2007, the SEC responded to the Second Circuit's *AIG* decision by amending Rule 14a-8 to grant issuers discretion to exclude not only proposals "relat[ing] to an election for membership on the company's board," but also proposals concerning "procedures" for nomination or election to the board.[5]

Almost immediately after the SEC passed the revised rule, Plaintiff set about to undermine it. Since the rule's passage, Plaintiff has proposed to *eleven* other companies that they include in their proxy materials proposals substantially similar to the one at issue here.[6] In each instance, Plaintiff withdrew his proposal before the SEC could act on the issuers' no-action requests.

---

[4]    *AIG*, 462 F.3d at 126 (quoting Proposed Amendments to Rule 14a-8, Exchange Act Rel. No. 34-12598, 41 Fed. Reg. 29,982, 29,9845 (proposed July 7, 1976) (court's emphasis suppressed)).

[5]    *See* Shareholder Proposals Relating to the Election of Directors, Exchange Act Release No. 34-56914, Fed. Sec. L. Rep. (CCH) ¶ 88,023 at 6 (Dec. 6, 2007) (the "2007 Final Release"). (Dowd Decl., Ex. C.)

[6]    *See* No-Action Requests and Bebchuk's Proposals to International Paper Company, Consolidated Edison, Inc., Omnicom Group Inc., Xerox Corporation, Time Warner Inc., The Home Depot, Inc., The Gap, Inc., Schering-Plough Corporation, McDonald's Corporation, Exxon Mobil Corporation, and El Paso Corporation. (Dowd Decl., Exs. D1–D11.)

### B.    The Proposal

Against this backdrop, on February 20, 2008, Plaintiff submitted his Proposal to EA for inclusion in its 2008 proxy statement.[7] His Proposal, if implemented, would obligate EA to (i) include in its notice of annual meeting of shareholders and its corporate proxy, and (ii) submit to a shareholder vote, any "Qualified Proposal."

The "Qualified Proposal" definition in the Proposal establishes several modest conditions to including a proposal in the notice to shareholders and the corporate proxy.  The first simply establishes certain process and eligibility requirements and for submitting a "Qualified Proposal" in future years:

> (a) The proposal was submitted to the Corporation no later than 120 days following the Corporation's preceding annual meeting by one or more stockholders (the "Initiator(s)") that (i) singly or together beneficially owned at the time of submission no less than 5% of the Corporation's outstanding common shares, (ii) represented in writing an intention to hold such shares through the date of the Corporation's annual meeting, and (iii) each beneficially owned continuously for at least one year prior to the submission common shares of the Corporation worth at least $2,000.00.

The second condition, Subsection (b) of the definition, requires that "[i]f adopted, the proposal would effect only an amendment to the Corporation's Bylaws, and would be valid under applicable law."  Thus, the definition requires only that all Qualified Proposals comply with existing laws and request a change in EA's bylaws.

The third condition, Subsection (c), requires future proposals to be "a proper action for stockholders under state law" unrelated to the "Corporation's ordinary business operations."  This tells shareholders two things. First, if the Proposal were implemented, the propriety of any

---

[7]    Letter from R. Plesnarski to the SEC dated March 26, 2008 (March 26, 2008 SEC Letter").  (Dowd Decl, Ex. E, internal Ex. A at 2.)

future proposals would be decided under state law, not Rule 14a-8. Second, Delaware's General Corporate Law would similarly govern EA's discretion to omit a future proposal (assuming that it complies with the eligibility and process requirements).

The fourth condition, Subsection (d), mimics Rule 14a-8(d), and simply requires a Qualified Proposal to be 500 or fewer words.

The fifth condition, Subsection (e), requires a shareholder-proponent to give EA within 21 days "any information that was reasonably requested . . . for determining [the proponent's] eligibility to submit a Qualified Proposal or to enable the Corporation to comply with applicable law." This provision supplies a procedure for the company to seek information demonstrating compliance with the Qualified Proposal definition's eligibility requirements.

In the "Supporting Statement," Plaintiff explains to shareholders that he is attempting to force EA to include in its proxy materials proposals from shareholders that own more than 5% of EA's stock. His sole description of the existing SEC scheme is that "[c]urrent and future SEC rules may in some cases allow companies—but do not currently require them—not to place proposals for Bylaw amendments initiated by stockholders in the Corporation's notice of an annual meeting and proxy card for the meeting." He urges all shareholders to support the Proposal, even if just "to express support for facilitating stockholders' ability to decide for themselves whether to adopt Bylaw amendments initiated by stockholders."

### C. This Lawsuit

EA's annual shareholder meeting is set for July 31, 2008. In accordance with Rule 14a-8, on March 26, 2008, EA promptly wrote the SEC to request confirmation from the staff that EA was permitted to exclude the Proposal from its 2008 proxy materials.[8] EA argued, among other

---

[8]    *See* March 26, 2008 SEC Letter. (Dowd Decl., Ex. E.)

things, that it may exclude the Proposal (i) under Rule 14a-8(i)(3) because the Proposal is contrary to the proxy rules, specifically Rule 14a-8; (ii) under Rule 14a-8(i) because the Proposal would allow shareholders to circumvent the proxy rules by requiring the company to include in future company proxies shareholder proposals that Rule 14a-8(i) would otherwise allow EA to exclude; and (iii) under Rule 14a-8(i)(3) because the Proposal is vague and indefinite.[9]

Plaintiff informed the SEC that he would respond to EA's request by April 16, 2008, and requested that the Staff defer responding to EA's request until then.[10] But instead of responding, Plaintiff sought to short-circuit the SEC's process by filing this action on April 18. That same day, he asked the SEC to refrain from acting on EA's no-action request because of this litigation.[11] On May 23, 2008, the SEC wrote EA to inform it that the SEC would not resolve EA's no-action request because this action is pending. Accordingly, this Court is the sole authority to address the Proposal's exclusion from EA's proxy.

---

[9]    *Id.* at 2–3.  (Dowd Decl., Ex. E.)

[10]    Letter from M. Barry to the SEC dated April 1, 2008.  (Dowd Decl., Ex. F.)

[11]    Letter from M. Barry to the SEC dated April 18, 2008.  (Dowd Decl., Ex. G.)

**ARGUMENT**

Plaintiff's claim should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because he has failed to plead "enough facts to state a claim for relief that is plausible on its face."[12]  In assessing the legal sufficiency of Plaintiff's claim, the Court may consider the complaint's factual allegations, as well as "documents that [Plaintiff] either possessed or knew about and upon which [Plaintiff] relied in bringing the suit."[13]  Specifically, he has failed to plead facts, which, if true, would give rise to a claim under SEC Rule 14a-8.

**I.    EA MAY EXCLUDE THE PROPOSAL UNDER RULE 14a-8(i)(3) BECAUSE IT IS CONTRARY TO THE PROXY RULES**

**A.    Rule 14a-8 Is the Exclusive Procedure for Shareholder Access to an Issuer's Proxy Materials**

Rule 14a-8(i)(3) allows issuers to exclude from their proxy materials any shareholder "proposal or supporting statement that is contrary to any of the Commission's proxy rules."  The SEC adopted this rule under its exclusive power to issue rules concerning proxy solicitations. *See* 15 U.S.C. § 78n.  As the SEC made clear in its release seeking comments on the rule, Rule 14a-8(i)(3) merely codified procedures that were already assumed to be in place—the issuer's power to exclude a shareholder proposal that is contrary to the SEC's proxy solicitation rules:

> [T]he Commission proposes to add a new subparagraph [ ] to Rule 14a-8 *expressly providing* that a proposal or supporting statement may not be contrary to any of the Commission's proxy rules and regulations . . . .  This provision, if adopted, *would simply formalize a ground for omission that the Commission believes is inherent in the existing rule.*[14]

---

[12]    *Feige v. RCN Corp.*, No. 07 Civ. 8539(AKH), 2008 WL 906070, at *1 (S.D.N.Y. April 3, 2008) (quoting *Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1974 (2007)).

[13]    *Id.* (quoting *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)).

[14]    *See* Proposed Amendments to Rule 14a-8, Exchange Act Release No. 12598 [1976-1977 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 80, 634, at 6-7 (July 7, 1976) ("July 7, 1976 Release") (emphasis added).  (Dowd Decl., Ex. H.)

For its part, Rule 14a-8 prescribes the entire procedure for including shareholder proposals in an issuer's proxy statement. It specifies not only "when a company *must include* a shareholder's proposal in its proxy statement," but also when "the company is *permitted to exclude* [a] proposal."[15] Any alternative procedures for establishing when an issuer *must include* shareholder proposals in its proxy materials is inconsistent with, and therefore "contrary to," Rule 14a-8.

Rule 14a-8(i)(3)'s "contrary to" language, coupled with the SEC's exclusive authority to regulate the proxy solicitation process, provides issuers an extraordinarily broad power to exclude shareholder proposals. Because the SEC's regulatory framework is comprehensive, it has essentially "occupied the field" of proxy regulation, and anything that varies that framework—whether to restrict shareholder proxy access or relax it—is "contrary to" it. In this sense, Rule 14a-8(i)(3) is similar to the "field preemption" doctrine, where any effort to regulate a matter subject to exclusive federal authority is a nullity.[16]

The SEC staff's "no-action" letter in *State Street Corporation* illustrates this point.[17] There, a State Street shareholder demanded that the company include in its proxy statement a proposal seeking a bylaw amendment that would require State Street to submit for a shareholder vote and include in its proxy statement any future shareholder bylaw amendment proposals. State Street submitted a no-action request that argued, among other things, that the proposal could be excluded under Rule 14a-8(i)(3) because it was contrary to the SEC's proxy rules.

---

[15]    *See* Rule 14a-8 (emphasis added). (Dowd Decl., Ex. I.)

[16]    *See, e.g., Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) (field preemption applies to strike down state or local laws when "Congress intends federal law to 'occupy the field' in [an] area"); *United States v. Locke*, 529 U.S. 89, 111 (2000) (striking down state maritime laws concerning training, language requirements, and navigation watch staffing because "Congress has left no room for state regulation of these matters").

[17]    *See* State Street Corporation, SEC No-Action Letter, CCH Securities Internet Library (Feb. 3, 2004). (Dowd Decl., Ex. J.)

State Street argued that the SEC had exclusive authority to establish procedures for determining what must be included in a company's proxy and, therefore, the shareholder proposal would improperly limit State Street's discretion to exclude a shareholder proposal under the SEC's rules:

> The authority to regulate what is required or permitted in a proxy statement or on a form of proxy . . . is vested exclusively in the Commission under Section 14 of the 1934 Act and is expressed in related Rules and in Regulation 14A . . . [and the proposal's] attempt to clothe stockholders with rights of access to the Company's proxy statement and form of proxy absent compliance with Rule 14a-8 is flatly inconsistent with the scheme for access to the corporate electoral machinery that the Commission has carefully crafted, including under Rule 14a-8.

The SEC staff agreed with State Street, expressing the view that the company could exclude the proposal as contrary to the proxy rules under Rule 14a-8(i)(3).[18]

*State Street* demonstrates that it would be contrary to the proxy rules to *require* a company to include in its proxy materials a shareholder proposal that, if implemented, would in turn *require* a company to include in its proxy materials future shareholder proposals that Rule 14a-8 currently permits the company to exclude. Eliminating this discretion would be contrary to the SEC's decision to empower the issuer to exclude proposals that fall within Rule 14a-8(i)'s exclusionary categories. Therefore, the Proposal is contrary to Rule 14a-8 because, if implemented, it would *require* EA to include future shareholder proposals that do not comply with Rule 14a-8.

---

[18]    The Commission's no-action letters are entitled to deference from the courts as persuasive authority. *See New York City Employees Retirement Sys. v. SEC*, 45 F.3d 7, 13 (2d Cir. 1995). The Staff notes its concurrence with an issuer's position, as it did in *State Street*, by explaining that there "appears to be some basis" for its position. *See* Staff Legal Bulletin No. 14, Fed. Sec. L. Rep. (CCH) ¶ 60,014, at 8 (July 13, 2001) (indicating that in responding to a no-action request the SEC will "indicate either that there appears to be some basis for the company's view that it may exclude the proposal," or that they are "unable to concur in the company's view that it may exclude the proposal"). (Dowd Decl., Ex. K.)

The SEC has also repeatedly considered, and consistently rejected, rules that would allow shareholders to opt out of the SEC's proxy rules. For example, in 1982 and 1983, the SEC considered two amendments to Rule 14a-8. The first proposed amendment would have allowed issuers to adopt company-specific alternatives to Rule 14a-8. Under this proposed Rule 14a-8A, companies and their shareholders "would be permitted to formulate eligibility criteria and bases for exclusion of proposals more or less restrictive than those set forth in the Commission's rule."[19] The second proposed amendment, which came to be known as "Proposal III," was substantially similar to the Proposal, in that it would have required "all proposals that are proper under state law and that do not involve the election of directors" to "be included in an issuer's proxy statement," subject only to a numerical limitation.[20] The Commission rejected both proposed amendments because it determined that "the basic framework of current Rule 14a-8 provides a fair and efficient mechanism for the security holder proposal process, and . . . should serve the interests of shareholders and issuers well."[21] Thus, after balancing "the interests of shareholders and issuers," the SEC rejected schemes that would deny the SEC the power to regulate shareholder access to the proxy, reaffirming the SEC's exclusive authority to prescribe procedures for compelling issuers to include shareholder proposals in their proxy materials.[22] The SEC's affirmative rejection of a regulatory scheme that would have allowed what the

---

[19]    *See* Proposal II to Proposed Amendments to Rule 14a-8, Exchange Act Release 34-19135, Fed. Sec. L. Rep. (CCH) ¶ 83,262, at 2 (October 14, 1982) (the "1982 Proposing Release") (emphasis added). (Dowd Decl. Ex. L.)

[20]    *See* Proposal III to the 1982 Proposing Release at 5. (Dowd Decl., Ex. L.)

[21]    Amendments to Rule 14a-8, Exchange Act Release No. 34-20091, Fed. Sec. L. Rep. (CCH) ¶ 83,417, at 2–3 (Aug. 16, 1983). (Dowd Decl., Ex. M.)

[22]    *Id.*

Proposal seeks to accomplish here conclusively establishes that it is contrary to the existing proxy rules.[23]

In 1998, the SEC reiterated its exclusive power to regulate shareholder access to issuers' proxy materials. The SEC considered whether it "should adopt some *fundamentally different approach* to the shareholder approval system . . . such as encouraging each company to adopt its own shareholder proposal and rule process."[24] After weighing comments, the Commission again rejected an approach that would empower companies to adopt their own shareholder-proposal processes.[25]

**B.    The Proposal Is Contrary to Rule 14a-8 Because It Would Displace the SEC's Exclusive Authority to Regulate Access to EA's Proxy Machinery**

The Proposal is flatly contrary to Rule 14a-8 because it would create an alternative process that would eviscerate an issuer's discretion under the SEC rules to exclude certain proposals. For example, Rule 14a-8 allows EA to exclude proposals concerning (among other things):

- the redress of a personal grievance against EA (Rule 14a-8(i)(4));

- *de minimis* operations of EA not otherwise significantly related to its business (Rule 14a-8(i)(5));

- board elections, or a procedure for board nominations or elections (Rule 14a-8(i)(8));

- matters directly conflicting with one of EA's own proposals to be submitted to shareholders at the same meeting (Rule 14a-8(i)(9));

---

[23]    *Cf. Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 128 S. Ct. 761, 771 (2008) (rejecting the application of Section 10(b) liability to actors who, at most, aided and abetted fraud because Congress explicitly considered—but rejected—a private right of action for aiding and abetting securities fraud).

[24]    Amendments to Rules on Shareholder Proposals, Exchange Act Release No. 34-39093, Fed. Sec. L. Rep. (CCH) ¶ 85,961, at 20 (Sept. 18, 1997) (emphasis added). (Dowd Decl., Ex. N.)

[25]    Amendments to Rules on Shareholder Proposals, Exchange Act Release No. 34-40018, Fed. Sec. L. Rep. (CCH) ¶ 86,018, at 2 (May 21, 1998). (Dowd Decl., Ex. O.)

- policies or corporate governance matters that EA has substantially implemented (Rule 14a-8(i)(10));

- matters substantially duplicating those previously submitted to EA by another proponent that will already be included in the proxy materials for the same meeting (Rule 14a-8(i)(11));

- substantially the same subject matter as another proposal or proposals that EA previously included in its proxy materials within the last five years and that failed to win sufficient shareholder support to indicate shareholder interest (Rule 14a-8(i)(12)); and

- specific amounts of cash or stock dividends (Rule 14a-8(i)(13)).

But the Proposal makes no provision for these exclusions. Instead, it would require EA to include in its proxy materials *any* future shareholder bylaw amendment proposal that meets only these minimum threshold requirements:

1. certain procedural requirements that are similar to, but not the same as, those currently set forth paragraphs (b)–(e) of Rule 14a-8; and

2. the proposed bylaw amendment must be (a) "valid under applicable law," (b) a proper action for stockholders under state law, and (c) not deal with a matter relating to the Company's "ordinary business operations."

The Proposal's failure to recognize the discretion that the SEC's rules have granted issuers improperly encroaches on the SEC's exclusive power to regulate shareholder access to issuer proxies.

## II.    EA MAY EXCLUDE THE PROPOSAL BECAUSE IT IS CONTRARY TO RULE 14a-8(i)'s SPECIFIC REQUIREMENTS

### A.    The Proposal Is Squarely Contrary to the SEC's 2007 Amendments to Rule 14a-8(i)(8)

The Proposal's pernicious effects are most obvious as they relate to Plaintiff's prime objective—transforming the director election process. The Proposal would compel EA to include in its proxy materials shareholder proposals concerning EA's board election procedures. As such, it squarely contradicts the SEC's 2007 amendments to Rule 14a-8(i)(8). Those

amendments were designed to prevent precisely what the Proposal seeks to achieve, *i.e.*, allowing shareholders to compel a company to place dissident director candidates on its proxy.

The SEC amended Rule 14a-8(i)(8) in 2007 to allow issuers to exclude any proposal that "relates to" either "an election for membership on the company's board of directors" or "*a procedure for such nomination or election.*"[26]  The SEC adopted these amendments in response to the Second Circuit's decision in *AIG*, where the Court held that issuers could invoke then-existing Rule 14a-8(i)(8) to exclude only "proposals that relate to a particular election and not to proposals that [like the shareholder's in that matter], would establish the procedural rules governing elections generally."[27]  In amending the Rule, the SEC noted that Rule 14a-8(i)(8)'s "election exclusion" provision permits issuers to exclude any "shareholder proposal[] that may result in a contested election."[28]  And it declared that the Rule should be interpreted broadly, allowing issuers to exclude not only shareholder-nominated director candidates, but also shareholder procedural proposals that could lead to future contested board elections:

> [T]he phrase "relates to an election" in the election exclusion cannot be read so narrowly as to refer only to a proposal that relates to the current election . . . but rather must be read to refer to a proposal that "relates to an election" in subsequent years as well. In this regard, if one looked only to what a proposal accomplished in the current year, and not to its effect in subsequent years, the purpose of the exclusion could be evaded easily.[29]

The SEC's purpose in adopting this amendment was to "assure the integrity of director elections."[30]

---

[26]  *See* 2007 Final Release at 6 (the italicized portion is the new language).  (Dowd Decl., Ex. C.)

[27]  462 F.3d at 130.

[28]  2007 Final Release at 3.  (Dowd Decl., Ex. C.)

[29]  *Id.* at 5.  (Dowd Decl., Ex. C.)

[30]  *Id.* at 2 (Dowd Decl., Ex. C); *See also* JPMorgan Chase & Co., SEC No-Action Letter, CCH Securities Internet Library (Feb. 11, 2008) (post-2007 Amendment, granting no-action relief for proposal that would have

The Proposal is contrary to Rule 14a-8(i)(8)'s director election exclusion and, thus, EA is not required to include it. It is of no moment that the Proposal does not expressly mention director elections. The Proposal would inexorably allow shareholders access to EA's proxy to contest director elections through a simple three-step process:

1.    In Year 1, shareholders approve the Proposal, which is then implemented.

2.    In Year 2, a shareholder proposes a bylaw amendment requiring EA to include shareholder nominees in its proxy, contrary to the SEC's amendments to Rule 14a-8(i)(8)'s election exclusion provision, which empowers issuers to exclude a proposal that relates to future elections.

3.    In Year 3, a shareholder exploits the Year-2 bylaw amendment by proposing a slate of its own nominees; EA would then be obligated to include that slate in its proxy materials, contrary to Rule 14a-8(i)(8)'s election exclusion provision.

This result would be no mere coincidence. Rather, it is part and parcel of Plaintiff's goal of circumventing Rule 14a-8(i)(8), after he could not dissuade the SEC from adopting the 2007 amendment. In urging the SEC to reject that amendment, Plaintiff argued that "Rule 14a-8(i)(8) should be limited to proposals that relate to a particular election over particular candidates. This provision should not permit the exclusion of proposals that do not relate to any particular election but rather to the procedural rules to which all future elections would be subject."[31]  But the SEC expressly rejected that narrow approach in favor of a scheme that allows issuers to exclude a shareholder's proposed procedures for nominating directors. Likewise, in a recent law review article, Plaintiff wrote that "shareholders should be permitted to place on the corporate

established procedures concerning board elections) (Dowd Decl., Ex. Q.); The Bear Stearns Companies Inc., SEC No-Action Letter, CCH Securities Internet Library (Feb. 11, 2008) (same) (Dowd Decl., Ex. R.); E*Trade Financial Corp., SEC No-Action Letter, CCH Securities Internet Library (Feb. 11, 2008) (same) (Dowd Decl., Ex. S).

[31]    Letter from Lucian Bebchuk on behalf of Thirty-Nine Law Professors, to the SEC, at 2 (October 2, 2007). (Dowd Decl., Ex. T.)

ballot any proposed bylaw concerning elections that would be valid under state law if adopted."[32] But the SEC found in 2007 that such proposals could easily evade the Rule's purpose—to assure the integrity of the director election process by avoiding contested elections.

    The Proposal is thus contrary to Rule 14a-8(i)(8)'s letter and spirit. It could ultimately compel EA to allow access to its proxy for dissident director candidates, contrary to Rule 14a-8(i)(8).[33] Thus, under Rule 14a-8(i)(8), EA may exclude it.

    **B.**    **The Proposal Would Disrupt the SEC's Careful Balance between Shareholder Access to the Corporate Proxy and Avoiding Financial Waste**

    If adopted, this Proposal would also compel EA to include in its proxy materials numerous other proposals that Rule 14a-8(i) allows it to exclude. The Proposal would thereby disrupt carefully crafted rules that balance shareholder interests in shareholder access against potential harm to the company (and, thus, its shareholders). The SEC's proxy rules allow issuers to exclude many proposals to avoid "putting the issuer and its security holders to considerable expense."[34] But the Proposal, in contrast, would eliminate much of that discretion, thereby potentially resulting in a gross waste of corporate resources. For example, EA would no longer have the power to exclude shareholder proposals that had previously been submitted to a shareholder vote and rejected. *See* Rule 14a-8(i)(12). Nor would it any longer be able to exclude duplicative proposals (Rule 14a-8(i)(11)) or those that concern matters such as a

---

[32]    Lucian Bebchuk, *The Myth of the Shareholder Franchise*, 93 Va. L. Rev. 675, 707 (2007).

[33]    For the same reasons, EA may exclude Bebchuk's Proposal under Rule 14a-8(i)(3), (i)(4), (i)(5), (i)(6), (i)(7), (i)(9), (i)(10), (i)(11), (i)(12), and (i)(13). As the 2007 Final release explained, one must look at the effect of the proposal over multiple years to see if its effect is to evade the Rule 14a-8(i) exclusions. Here, the effect is the same for these other sub-categories of Rule 14a-8(i).

[34]    *See, e.g.*, Adoption of Amendments Relating to Proposals by Security Holders, Exchange Act Release No. 34-12999, [1976-1977 Transfer Binder] Fed. Sec. L. Rep. ¶ 80,812, at 3 (November 22, 1976) (permitting exclusion of proposals by shareholder who fail to appear at the annual meeting because "[t]his provision is in keeping with the overall purpose of the notice requirement, which is to avoid putting the issuer and its security holders to considerable expense for no valid purpose"). (Dowd Decl., Ex. P.); *see also* July 7, 1976 Release at 1 (explaining the proposed amendments are "designed to limit certain past shareholder abuses"). (Dowd Decl., Ex. H.)

corporate governance initiative that EA already has substantially implemented (Rule 14a-8(i)(10)). And EA would no longer have the power even to foreclose a shareholder from bringing her personal grievances before the entire shareholder body for a vote, and use EA's proxy materials to do so at EA's (and, derivatively, other shareholders') expense. *See* Rule 14a-8(i)(4).

Worse, the Proposal would allow shareholders to hijack EA's proxy materials in opposition to management proposals that EA has determined are in its shareholders' best interests. Rule 14a-8(i)(9) currently allows issuers to exclude any shareholder proposal that "directly conflicts with one of the company's own proposals to be submitted to shareholders at the same meeting." But the Proposal would strip EA of that authority. Going forward, EA's proxy materials would have to include any competing shareholder proposal, no matter how misguided and without regard to the confusion that would be created by competing or contradictory proposals. This squarely conflicts not only with Rule 14a-8(i)(9), but also with Congress's intent in enacting Section 14(a) to protect corporations from "irresponsible outsiders seeking to wrest control of a corporation away from honest and conscientious corporation officials." S. Rep. No. 73-1455 at 77, 73d Cong., 2d Sess. 77 (1934).

*    *    *

Over the past quarter-century, various advocates, such as Plaintiff, have urged the SEC to relax Rule 14a-8 to permit companies "to tailor governance arrangements to the companies' particular needs and circumstances."[35] But the SEC has consistently rejected such proposals, and has maintained a uniform, required process for all issuers. Having lost that policy battle with the

---

[35]    Letter from Lucian Bebchuk on behalf of Thirty-Nine Law Professors, to the SEC, at 2. (October 2, 2007) (Dowd Decl., Ex. T.)

country's securities regulators, Plaintiff cannot "now wag[e] in a judicial forum [the same] policy battle which [he] ultimately lost in the agency . . . Such policy arguments are more properly addressed to legislators or administrators, not to judges."[36]

## III.    EA MAY ALSO EXCLUDE THE PROPOSAL BECAUSE IT IS VAGUE AND INDEFINITE

The Proposal is also excludable because it is vague and indefinite.  An issuer may exclude a vague and indefinite proposal under Rule 14a-8(i)(3) because such proposals are "contrary to" the SEC's proxy rules, specifically Rule 14a-9, which forbids materially false and misleading information in proxy materials.  As the SEC has explained, an issuer may exclude a shareholder proposal under Rule 14a-8(i)(3) where

> the resolution contained in the proposal is so inherently vague or indefinite that neither the stockholders voting on the proposal, nor the company in implementing the proposal (if adopted), would be able to determine with any reasonable certainty exactly what actions or measures the proposal requires—this objection also may be appropriate where the proposal and the supporting statement, when read together, have the same result.[37]

In construing the "vague and misleading" component of Rule 14a-8(i)(3), Judge Patterson explained, "[s]hareholders are entitled to know precisely the breadth of the proposal on which they are asked to vote." [38]  But EA's public shareholders would not be able to comprehend fully the Proposal's myriad ramifications and applications.

### A.    The Proposal's Interaction with Rule 14a-8 Is Ambiguous

The Proposal appears to be an alternative scheme to Rule 14a-8.  But neither the Proposal nor its supporting statement explain how the scheme would work in relation to Rule 14a-8.  The

---

[36]    *Chevron, Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 864 (1984).

[37]    Staff Legal Bulletin No. 14B, Fed. Sec. L. Rep. (CCH) ¶ 60, 014B, at 4 (Sept. 15, 2004).  (Dowd Decl., Ex. U.)

[38]    *New York City Employees' Ret. Sys. v. Brunswick Corp.*, 789 F. Supp. 144, 146 (S.D.N.Y. 1992).

Proposal incorporates verbatim some portions of Rule 14a-8, such as the issuer's authority under Rule 14a-8(i)(7) to exclude proposals that relate to the company's "ordinary business operations." But it does not incorporate other portions of Rule 14a-8 and, in fact, adopts provisions that differ from Rule 14a-8. Thus, shareholders are left to guess whether the Proposal would completely supplant the SEC's regulatory scheme under Rule 14a-8 or would simply amend or supplement it in some way.

Plaintiff disclaims any intent to displace Rule 14a-8.[39] He argues that approving his Proposal "would merely urge the Company's directors to establish certain rules governing how the Company would exercise the discretion provided to it under the Rule."[40] But the Proposal goes much further, setting up a regime that differs from the SEC's proxy rules in many respects, including:

- supplying a definition of "proposal" different from the one in Rule 14a-8(a)—whereas Rule 14a-8(a) defines "proposal" as a "recommendation or requirement that the company and/or its board of directors take action" which the shareholder "intend[s] to present at a meeting of the company's shareholders," Plaintiff's Proposal does not provide a clear definition for proposal. Instead it defines a "Qualified Proposal" as any "proposal" that satisfies certain procedural requirements set forth in the Proposal;

- substituting its own eligibility requirements for those in Rule 14a-8(b)—whereas Rule 14a-8(b) permits shareholders to submit a proposal only if the shareholder has "continuously held at least $2,000 in market value or 1%, of the companies securities," the Proposal requires the shareholder (or group of shareholders submitting the Proposal) "singly or together beneficially owned at the time of submission no less than 5% of the Corporations common shares," and further requires that each shareholder for at least one year prior to the submission hold "common shares of the Corporation worth at least $2,000";

- eliminating Rule 14a-8(c)'s limit of one proposal per shareholder per meeting;

---

[39]    Compl. ¶ 32.

[40]    *Id.*

- narrowing substantially Rule 14a-8(i)'s thirteen substantive bases for excluding shareholder proposals.

In contrast, the Proposal is silent on numerous other matters, such as whether Rule 14a-8(j)'s process for issuers to inform the SEC of those proposals they intend to exclude applies, or whether an issuer would be required to inform shareholders of a failure to meet the definition of "Qualified Proposal" and allow that failure to be cured.

This crazy-quilt scheme is likely to confuse shareholders. Some would believe that the Proposal results in an opt-out of Rule 14a-8's shareholder-proposal process. Others would believe that it opts out of some of Rule 14a-8's requirements, but not others. And still others would be justifiably unsure as to the ultimate consequences.

In seeking to clarify the Proposal's effect, Plaintiff argues that the Proposal is merely "precatory,"[41] and does not actually require EA to enact anything. That argument, however, is beside the point. The SEC has long interpreted Rule 14a-8 to permit issuers to exclude proposals that fall within Rule 14a-8(i)'s exclusionary categories even though they are precatory in nature.[42] Indeed, Rule 14a-8(a)'s "proposal" definition includes "recommendation[s]," which are plainly excludable if they fall within one of Rule 14a-8(i)'s categories.

**B.    The Proposal Fails to Tell Shareholders or EA What Future Actions or Measures the Proposal Requires**

Plaintiff's Proposal fails to inform shareholders—or just as importantly, EA—what future actions are required. This infects both the Proposal's procedural and the substantive aspects.

The Proposal's vagueness is exemplified by its partial incorporation of Rule 14a-8(f), which requires EA to provide shareholders an opportunity to cure any "eligibility or procedural"

---

[41]    Compl. ¶ 30.

[42]    July 7, 1976 Release (noting that the existing Rule permitted companies to exclude certain proposals even if couched as a "recommendation or request"). (Dowd Decl., Ex. H.)

defects in their proposals. By contrast, Proposal subsection (e) would allow a shareholder proponent to remedy only *eligibility* defects. Thus, EA is left to guess regarding the extent to which Rule 14a-8(f) would still apply. On the one hand, the Proposal's partial exclusion of Rule 14a-8(f)'s protections could be interpreted to allow EA to exclude a "Qualified Proposal" that failed the 500-word limitation without notice and without providing the proponent an opportunity to cure the failure. On the other hand, the Proposal's silence could mean that Rule 14a-8(f) would still apply, and that EA would remain obligated to provide the proponent an opportunity to cure the defect.

Even the Proposal's process for curing eligibility defects is indefinite. The process would require proponents to provide EA information "reasonably requested." But the Proposal provides no guidance as to what constitutes a "reasonable request"—a facially indefinite phrase when considered in the context of the tight timeframes and informational requirements under which issuers must advise proponents of deficiencies under Rule 14a-8(f).[43] In those circumstances, EA and shareholder-proponents are apt to reach different conclusions as to what is "reasonable." Thus, EA's actions "could be significantly different from the actions envisioned by the shareholders voting on the proposal."[44] Rule 14a-8(f)'s 14-day notification deadline, by contrast, tells EA exactly what to do and when.

Likewise, the Proposal is silent on EA's obligations for handling substantive defects. One of the few substantive exclusionary bases under the Proposal is where a shareholder proposal concerns "ordinary business operations." That ground mirrors Rule 14a-8(i)(7). But if

---

[43]    *See* Staff Legal Bulletin No. 14, Fed. Sec. L. Rep. (CCH) ¶ 60,014, at 4-5 (July 13, 2001). (Dowd Decl., Ex. K.)

[44]    *See* Fuqua Indus., Inc. No-Action Letter, CCH Securities Internet Library, at 5, 6, 7 (March 12, 1991) (issuing No-Action Letter in response to proposal on the grounds that undefined terms such as any "major shareholder," "assets/interest" and "obtaining control" in the proposal may make the proposal vague, indefinite, and misleading). (Dowd Decl., Ex. V.)

EA were to exclude a proposal under Rule 14a-8(i)(7), Rule 14a-8(j) would require EA to provide notice to the SEC and shareholder. The Proposal, in contrast, has no Rule 14a-8(j) analog. Thus, it is unclear whether Plaintiff purports to obligate EA to continue to provide notice to the SEC and shareholders for excluded proposals. This uncertainty leaves EA exposed to litigation threats from its shareholders for failing to follow the Proposal's requirements, regardless of which interpretation it adopts.

## CONCLUSION

Plaintiff has chosen EA as his latest test case in his personal corporate governance policy agenda. But his efforts are misplaced because EA plainly has the discretion to exclude his Proposal on several grounds. The Proposal is flatly contrary to the SEC's proxy rules—thereby justifying its exclusion under Rule 14a-8(i)(3)—because it would result in empowering shareholders to force EA to effectively opt out of the SEC's regulatory regime for regulating shareholders access to the corporate proxy. The SEC has consistently rejected opt-out schemes—both in its rulemaking and in its no-action response in *State Street*. Moreover, Plaintiff's transparent attempt to provide dissident shareholders access to the corporate proxy by eliminating directors' ability to exclude future proposals concerning elections is squarely at odds with the SEC's 2007 amendment to Rule 14a-8(i)(8) specifically, and Rule 14a-8(i) generally. And his attempt to displace an extensive, carefully calibrated regulatory scheme with a one-paragraph resolution renders the Proposal vague and indefinite, leaving shareholders and EA guessing as to what future actions are required. The Complaint should therefore be dismissed with prejudice.

Dated: May 30, 2008
New York, New York

O'MELVENY & MYERS LLP

By: _____
    Jonathan R. Rosenberg
    William J. Sushon
    Brendan J. Dowd

7 Times Square
New York, New York  10036
(212) 326-2000
jrosenberg@omm.com
wsushon@omm.com
bdowd@omm.com

*Attorneys for Defendant Electronic Arts Inc.*

**CERTIFICATE OF SERVICE**

I, Orly Nhaissi, hereby certify under penalty of perjury that on this 30th day of May

2008, I caused a true and correct copy of the forging Memorandum of Law in Support of

Electronic Arts Inc.'s Motion to Dismiss to be served through the Court's ECF system by

electronic filing on the individuals below:

Jay W. Eisenhofer, Esq.
Michael J. Barry, Esq.
Grant & Eisenhofer P.A.
Chase Manhattan Center
1201 North Market Street
Wilmington, Delaware 19801
jeisenhofer@gelaw.com
mbarry@gelaw.com

Dated: May 30, 2008
      New York, New York

   /s/ Orly Nhaissi        
Orly N. Nhaissi
