**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LUCIAN BEBCHUK,                                )<br>                                                      )<br>                     Plaintiff,            )<br>                                                      )<br>          v.                                          )<br>                                                      )<br>                                                      )<br>ELECTRONIC ARTS, INCORPORATED,  )<br>                                                      )<br>                     Defendant.          )<br>                                                      ) | Civil No. 08-3716 (AKH) |

## ***AMICUS CURIAE*'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR LEAVE TO FILE**

PLEASE TAKE NOTICE that, based upon the Memorandum Of Law In Support of *Amicus Curiae*'s Unopposed Motion For Leave To File, and the proposed brief tendered herewith, *Amicus Curiae* The Chamber of Commerce of the United States of America, by their undersigned attorneys, will move this Court, in the Courtroom of the Honorable Alvin K. Hellerstein, United States District Judge, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, Room 1050, New York, New York, at a time and date to be determined by this Court, for an Order granting *Amicus Curiae*'s unopposed motion for leave to file its proposed brief. A proposed order is attached.

DATED:  July 18, 2008                    Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP


_____

Eugene Scalia*
Indraneel Sur*
1050 Connecticut Avenue, N.W., Suite 300
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile:  (202) 530-9695
escalia@gibsondunn.com
isur@gibsondunn.com
*Admitted pro hac vice

Counsel for Amicus Curiae Chamber of Commerce
of the United States of America

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LUCIAN BEBCHUK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil No. 08-3716 (AKH) |
| | ) |
| ELECTRONIC ARTS, INCORPORATED, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## MEMORANDUM OF LAW IN SUPPORT OF *AMICUS CURIAE*'S
## UNOPPOSED MOTION FOR LEAVE TO FILE

The Chamber of Commerce of the United States of America (the "Chamber")
respectfully submits this memorandum of law in support of its unopposed motion for leave to file
its brief as *amicus curiae* in support of defendant.

## PRELIMINARY STATEMENT

The Chamber is the world's largest business federation. The Chamber represents an
underlying membership of more than three million companies and professional organizations of
every size, in every industry sector, and from every region of the country. A principal function
of the Chamber is to convey the unique perspective of the business community by filing *amicus
curiae* briefs in cases involving issues of national concern to American businesses, including
cases under the federal securities laws. *See, e.g., Stoneridge Inv. Partners, LLC v. Scientific-
Atlanta, Inc.*, 128 S. Ct. 761 (2008); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499
(2007); *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005).

This case is one of first impression. It presents the question whether the Securities
Exchange Act of 1934 and its implementing regulations require a company to include in its own

proxy materials a shareholder proposal that, if approved, would deprive the company of the ability it currently has under the law to exclude from its proxy materials shareholder proposals that fail to satisfy certain clearly-delineated legal criteria. That question is of significant concern to the Chamber, which has both a unique perspective on the impact the decision in this case will have, and a keen interest in ensuring that the legal framework under which its members operate is rational, fair, and consistent. Accordingly, the Chamber submits this brief in support of defendant, urging that the motion to dismiss be granted.

## ARGUMENT

Granting leave to file an amicus brief has been held to be appropriate where there would be no prejudice to any party, and where additional briefing would "provide an additional perspective not otherwise available to the court," and "insure a complete and plenary presentation of potentially difficult issues so that the court may reach a proper decision." *Onondaga Indian Nation v. New York*, No. 07-445, 1997 U.S. Dist. LEXIS 9168, at *8 (N.D.N.Y. June 25, 1997) (citations, internal quotation marks and punctuation omitted). *Cf. Neonatology Assocs.*, *P.A. v. Comm'r*, 293 F.3d 128, 132 (3d Cir. 2002) (Alito, J., in chambers).

The requested leave to file should be granted here. *First,* plaintiff and defendant have consented to the Chamber's amicus participation in this case; there will be no prejudice to any party from such participation. *Second*, because this is a case raising a novel question concerning the proxy solicitation regulations that the SEC has enacted pursuant to the Exchange Act, it is appropriate for the Court to hear the unique perspective of companies such as the Chambers' members that have many years of experience under those regulations. *Third*, by explaining the structure of the SEC's proxy regulation regime and how that structure differs from the alternative channel that plaintiff's proposal would establish, the Chamber's brief will assist this Court in assessing the practical consequences of the parties' positions.

## CONCLUSION

The Chamber respectfully requests that this Court grant leave to file the amicus brief tendered herewith.

DATED:  July 18, 2008                          Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

Eugene Scalia*
Indraneel Sur*
1050 Connecticut Avenue, N.W., Suite 300
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile:  (202) 530-9695
escalia@gibsondunn.com
isur@gibsondunn.com
*Admitted pro hac vice

*Counsel for Amicus Curiae Chamber of Commerce
of the United States of America*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LUCIAN BEBCHUK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil No. 08-3716 (AKH) |
| | ) |
| ELECTRONIC ARTS, INCORPORATED, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## ORDER

Upon consideration of *Amicus Curiae* The Chamber of Commerce of the United States of America's Notice of Unopposed Motion and Unopposed Motion for Leave to File, and the memorandum submitted in support thereof, and good cause having been shown:  the Unopposed Motion for Leave to File is GRANTED, and it is ORDERED that the tendered amicus brief be filed, this ___ day of July 2008.

_____
ALVIN K. HELLERSTEIN
United States District Judge

1

## <u>CERTIFICATE OF SERVICE</u>

I, Indraneel Sur, hereby certify, under penalty of perjury pursuant to 28 U.S.C. § 1746, that on this 18th day of July 2008, I served a true and correct copy of the foregoing *Amicus Curiae*'s Notice of Motion and Motion for Leave to File, and the supporting memorandum and proposed order, by electronic mail and by first class mail, postage prepaid, upon the following counsel of record:

Jay W. Eisenhofer
Michael J. Barry
Grant & Eisenhofer P.A.
1201 North Market Street
Wilmington, DE 19801

Jonathan Rosenberg
O'Melveny & Myers LLP
7 Times Square
New York, NY 10036

_____
Indraneel Sur

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LUCIAN BEBCHUK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil No. 08-3716 (AKH) |
| | ) |
| ELECTRONIC ARTS, INCORPORATED, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**BRIEF FOR THE**
**CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA**
**AS *AMICUS CURIAE* SUPPORTING DEFENDANT**

DATED:  July 18, 2008

OF COUNSEL:
NATIONAL CHAMBER
LITIGATION CENTER, Inc.
Robin S. Conrad
Amar D. Sarwal
1615 H Street, N.W.
Washington, D.C. 20062
Telephone:  (202) 463-5337

GIBSON, DUNN & CRUTCHER LLP
Eugene Scalia*
Indraneel Sur*
1050 Connecticut Avenue, N.W., Suite 300
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile:  (202) 530-9695
escalia@gibsondunn.com
isur@gibsondunn.com
*Admitted pro hac vice*

*Counsel for Amicus Curiae Chamber of Commerce*
*of the United States of America*

# TABLE OF CONTENTS

Page

INTEREST OF *AMICUS CURIAE* ........................................................................... 1

SUMMARY OF ARGUMENT ................................................................................... 2

REGULATORY BACKGROUND ............................................................................. 4

ARGUMENT ............................................................................................................... 8

    A.    Rule 14a-8 Cannot Be Construed To Mandate Inclusion In Company Proxy Materials Of Shareholder Proposals That Would Circumvent And Nullify The Investor Protections Set Forth In Rule 14a-8 And The SEC's Other Proxy Rules. ............................................................... 8

    B.    Plaintiff's Proposal Is Impermissibly Vague And Therefore Is Properly Excluded. ......................................................................... 16

    C.    The Precatory Character Of Plaintiff's Proposal Does Not Cure Its Deficiencies........................................................................ 20

CONCLUSION ......................................................................................................... 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Sandoval*,
  532 U.S. 275 (2001) .................................................................................. 9, 10

*Am. Paper Inst., Inc. v. Am. Elec. Power Serv. Corp.*,
  461 U.S. 402 (1983) ....................................................................................... 16

*Auer v. Robbins*,
  519 U.S. 452 (1997) ....................................................................................... 17

*Bebchuk v. CA, Inc.*,
  902 A.2d 737 (Del. Ch. 2006) ....................................................................... 20

*Black & Decker Disability Plan v. Nord*,
  538 U.S. 822 (2003) ....................................................................................... 14

*Bowles v. Seminole Rock & Sand Co.*,
  325 U.S. 410 (1945) ....................................................................................... 17

*Bus. Roundtable v. SEC*,
  905 F.2d 406 (D.C. Cir. 1990) ......................................................................... 4

*CA, Inc. v. AFSCME Employees Pension Plan*,
  No. 329 (slip op.) (Del. July 17, 2008) (en banc) ................................... 14, 19

*Cent. Bank of Denver, N. A. v. First Interstate Bank of Denver, N. A.*,
  511 U.S. 164 (1995) ......................................................................................... 9

*Chevron U.S.A. Inc. v. NRDC*,
  467 U.S. 837 (1984) ....................................................................................... 14

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) ......................................................................................... 1

*Dyer v. SEC*,
  287 F.2d 773 (8th Cir. 1961) ......................................................................... 17

*Koppel v. 4987 Corp.*,
  167 F.3d 125 (2d Cir. 1999) .......................................................................... 10

*Malone v. Brincat*,
  722 A.2d 5 (Del. 1998) ..................................................................................... 6

*NYC Employees' Ret. Sys. v. Brunswick Corp.*,
  789 F. Supp. 144 (S.D.N.Y. 1992) ................................................................ 17

*Roosevelt v. E.I. Du Pont de Nemours & Co.*,
  958 F.2d 416 (D.C. Cir. 1992) ................................................................... 7, 10

**Table of Authorities**
**(Continued)**

**Page(s)**

*Santa Fe Indus., Inc.. v. Green,*
    430 U.S. 462 (1977)........................................................................................... 4

*Smiley v. Citibank (South Dakota), N.A.,*
    517 U.S. 735 (1996)......................................................................................... 12

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.,*
    128 S. Ct. 761 (2008)................................................................................ 1, 9, 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    127 S. Ct. 2499 (2007)...................................................................................... 1

*Va. Bankshares, Inc., v. Sandberg,*
    501 U.S. 1083 (1991)..................................................................................... 5, 6

*Whitman v. Am. Trucking Ass'ns,*
    531 U.S. 457 (2001)........................................................................................ 16

**Statutes**

15 U.S.C. § 78(n)(a) ................................................................................... passim

15 U.S.C. § 78l............................................................................................... 5

**Regulations**

17 C.F.R. § 240.14a-101 ............................................................................... 5, 13

17 C.F.R. § 240.14a-3 ....................................................................................... 5

17 C.F.R. § 240.14a-4(a)(3) ............................................................................. 10

17 C.F.R. § 240.14a-4(b)(1) ............................................................................. 10

17 C.F.R. § 240.14a-8 ................................................................................. passim

17 C.F.R. § 240.14a-9 .................................................................................. 6, 16

**Other Authorities**

2007 Postseason Report 7 chart 3 (Oct. 2007),
    <http://www.riskmetrics.com/pdf/2007PostSeasonReportFINAL.pdf> .................................. 8

Adoption of Amendments Relating to Proposals by Security Holders,
    Rel. No. 34-12999, 41 Fed. Reg. 52,994 (Nov. 22, 1976)....................................... 12

Amendments to Rule 14a-8 Under the Securities Exchange Act of 1934
    Relating to Proposals by Security Holders, Rel. No. 34-20091,
    48 Fed. Reg. 38,218 (Aug. 16, 1983) ......................................................... 15

Del. Sup. Ct. R. 41 ......................................................................................... 19

**Table of Authorities**
**(Continued)**

**Page(s)**

*Empowering Shareholders On Executive Compensation*,
   Hearing Before the H. Comm. on Fin. Servs., 110th Cong. 73 (2007) .................................... 14

Fidelity Magellan Fund, SEC No-Action Letter (Mar. 10, 2005) ................................. 19

H.R. Rep. No. 1383, 73d Cong., 2d Sess. 13 (1934) ..................................................... 4

ISS Governance Servs., 2008 U.S. Proxy Voting Guidelines: Concise
   Summary 2 (Dec. 21, 2007), <http://www.riskmetrics.com/pdf/
   2008_US_ConciseSummaryGuidelines.pdf> ............................................................. 21

Leo E. Strine, Jr., *A Traditionalist Response to Bebchuk's Solution for
   Improving Corporate America*, 119 Harv. L. Rev. 1759 (2006) ............................................. 13

Proposed Amendments to Rule 14a-8 Under the Securities Exchange Act of 1934
   Relating to Proposals by Security Holders, Rel. No. 34-19135,
   47 Fed. Reg. 47,420 (Oct. 14, 1982) .................................................................. 15, 17

*Proxy Voting By Registered Investment Companies:  Promoting the Interests of Fund
   Shareholders*, Investment Company Institute Research Perspective,
   Vol. 14, No. 1 (July 2008), <http://www.ici.org/pdf/per14-01.pdf> ............................. 2, 20, 21

SEC, *Implications of the Growth of Hedge Funds* (Sept. 2003),
   <http://www.sec.gov/news/studies/hedgefunds0903.pdf> ....................................... 13

Shareholder Proposals Relating to the Election of Directors (Proposed Rule),
   Rel. No. 34-56161, 72 Fed. Reg. 43,488 (July 27, 2007) .......................................... 5

## INTEREST OF *AMICUS CURIAE*

The Chamber of Commerce of the United States of America (the "Chamber") is the world's largest business federation. The Chamber represents an underlying membership of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country. A principal function of the Chamber is to convey the unique perspective of the business community by filing *amicus curiae* briefs in cases involving issues of national concern to American businesses, including cases under the federal securities laws.[1]

This case presents the question whether the Securities Exchange Act of 1934 and its implementing regulations require a company to include in its own proxy materials a shareholder proposal that, if approved, would deprive the company of the ability it currently has under the law to exclude from its proxy materials shareholder proposals that fail to satisfy certain clearly-delineated legal criteria. That question is of significant concern to the Chamber, whose members include issuers of securities registered with the SEC and listed on national securities exchanges that on occasion receive improper shareholder proposals and exclude them from the corporate proxy materials. The proponents of those proposals often use the shareholder proposal mechanism to promote their own narrow, parochial interests or to demand that the issuer address political or social issues disconnected from the issuer's business. Indeed, as the Investment Company Institute recently concluded, such proposals "tend to be sponsored by a small number of individuals and organizations. One-third of the more than 600 shareholder proposals that

---

[1] *See, e.g.*, *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 128 S. Ct. 761 (2008); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007); *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005).

1

came to a vote in the year ending June 30, 2007, were sponsored by five individuals and three

labor unions."[2]

The legitimate exclusion of such proposals protects shareholders.  It also makes each

company's proxy materials easier to comprehend and less expensive for the company (and thus

its shareholders) to prepare and distribute, and facilitates shareholders' review and evaluation of

those materials before voting.  The Chamber therefore has both a unique perspective on the

impact the decision in this case will have, and a keen interest in ensuring that the legal

framework under which its members operate is rational, fair, and consistent.  Accordingly, the

Chamber submits this brief in support of Electronic Arts, urging that the motion to dismiss be

granted.

## SUMMARY OF ARGUMENT

The Securities and Exchange Commission exercised the broad authority delegated to it by

Congress in Section 14(a) of the Securities Exchange Act of 1934 by prescribing a carefully-

considered set of rules governing proxy solicitation.  Those rules provide significant investor

protections.  In general, when a shareholder seeks to propose that a particular matter be

considered at a shareholder meeting, the shareholder must prepare its own proxy materials

consistent with the SEC's rules.  An exception to this general principle is that a shareholder may

include a proposal in the company's proxy materials if the criteria set forth in Rule 14a-8 are

met.  In adopting and revising Rule 14a-8 over the years, the SEC has identified several grounds

on which a company may exclude a shareholder proposal.  That set of exclusions reflects a

---

[2] *Proxy Voting By Registered Investment Companies:  Promoting the Interests of Fund Shareholders*, Investment Company Institute Research Perspective, Vol. 14, No. 1 (July 2008), at 1 <http://www.ici.org/pdf/per14-01.pdf> [hereinafter *Proxy Voting*].

careful balancing of competing interests by the SEC, the expert agency to which Congress delegated the authority to administer and enforce the securities laws.

A.     Plaintiff's complaint asserts that Rule 14a-8 must be construed to compel Electronic Arts to include his ill-defined proposal in the company's proxy materials.  That assertion is properly rejected.  Implicit in plaintiff's claim is the unfounded notion that Rule 14a-8 requires a company to include in its proxy materials a proposal that, if enacted, thereafter would circumvent Rule 14a-8 by requiring companies to include in their proxy materials shareholder proposals that fail to satisfy the requirements that Rule 14a-8 and the other SEC proxy rules establish for investor protection.  In other words, plaintiff seeks to use the regulation to set up an alternative and less protective procedure that would render irrelevant the very agency regulation on which he bases his claim to relief.

At bottom, plaintiff aims to substitute his opinion for the SEC's judgment about what types of shareholder proposals warrant inclusion in company materials.  Were his argument correct, shareholders at every public company could establish their own set of rules for placing shareholder proposals in company proxy materials—which of course would negate the investor protections and uniformity benefits of the SEC's carefully-crafted proxy rules.  Rule 14a-8 cannot be interpreted to require its own undoing.

B.     In addition to being irreconcilable with the proxy rules, plaintiff's proposal is properly excluded on the alternative ground that it is vague and indefinite.  Shareholders cannot be expected to conjure up the necessary details to fill in the blanks and to resolve the ambiguities in the proposal.  Rather, they must know the precise content of the proposal before they can reasonably be asked to consider it.

C.      The deficiencies in plaintiff's proposal are not cured by its precatory language.

The SEC rules define shareholder proposals to include those phrased as recommendations, and in

carrying out their fiduciary duties directors give appropriate weight to shareholder proposals that

receive significant voting support *regardless* whether those proposals are cast in precatory terms.

Indeed, because influential shareholder advisory services base their recommendation on voting

for directors upon director responses to shareholder proposals, precatory proposals such as

plaintiff's can have substantial force and effect.

## REGULATORY BACKGROUND

State law and the Exchange Act already provide extensive and carefully-balanced

processes through which shareholders may seek votes on corporate matters of common concern.

The existing regulatory regime enacted by Congress and administered by the SEC reflects

deliberate legal and policy choices that warrant judicial respect.

1.      State law governs the internal affairs of the corporation, and prescribes the

corporate acts that require shareholder authorization.[3]  This authorization is usually conveyed

through proxies, since most shareholders do not personally attend annual or special meetings to

vote in person.  Congress gave the SEC the "power to control the conditions under which proxies

may be solicited" because proxy solicitations are "*communications* with potential absentee

voters."  *Bus. Roundtable v. SEC*, 905 F.2d 406, 410 (D.C. Cir. 1990) (quoting H.R. Rep. No.

1383, 73d Cong., 2d Sess. 13 (1934)).

---

[3]  "Corporations are creatures of state law, and investors commit their funds to corporate
directors on the understanding that, except where federal law expressly requires certain
responsibilities of directors with respect to stockholders, state law will govern the internal affairs
of the corporation."  *Santa Fe Indus., Inc.. v. Green*, 430 U.S. 462, 479 (1977) (internal quotation
marks and emphasis omitted).

In particular, Section 14(a) of the Exchange Act (15 U.S.C. § 78n(a)) makes it unlawful, "in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors," to "solicit . . . any proxy or consent or authorization in respect of any" non-exempt security registered under Section 12 of the Act (15 U.S.C. § 78l). Section 14(a) thus "authorizes the [SEC] to adopt rules for the solicitation of proxies, and prohibits their violation." *Va. Bankshares, Inc., v. Sandberg*, 501 U.S. 1083, 1086 (1991). Invoking that authority, the SEC has promulgated detailed regulations covering "not only the information required to be disclosed to ensure that shareholders receive full disclosure of all information that is material to the exercise of their voting rights under state law and the corporation's charter, but also the procedure for soliciting proxies." Shareholder Proposals Relating to the Election of Directors (Proposed Rule), Rel. No. 34-56161, 72 Fed. Reg. 43,488, 43,489 (July 27, 2007).

Under state and federal law, a shareholder who desires to have a matter considered at a shareholder meeting generally must do so by preparing and distributing its *own* proxy materials, which must contain the disclosures required by the SEC. The SEC regulations accordingly include a panoply of protections designed to ensure that *all* proxy materials received by shareholders meet certain minimum standards designed to protect investors. One such regulation, Rule 14a-3 (17 C.F.R. § 240.14a-3), requires any party that solicits proxies to file with the SEC and provide to solicited shareholders a proxy statement that contains the information specified in Schedule 14A (17 C.F.R. § 240.14a-101). That schedule includes information about any financial or other interests that the shareholder has in the proposal. It also includes information regarding the identity and interests of persons other than the shareholder who may be funding the shareholder's proposal. *See* Schedule 14A, Item 4. Another regulation

of overarching importance to investor protection is Rule 14a-9 (17 C.F.R. § 240.14a-9), which

"prohibits the solicitation of proxies by means of materially false or misleading statements,"

*Sandberg*, 501 U.S. at 1086.

   The proxy regulations contemplate that multiple sets of proxy materials may exist in

connection with a single shareholder meeting.  One set of materials, controlled by the company,

comprises the materials the company considers necessary to impart, based on the directors' and

managers' fiduciary obligations to act in the best interests of the company and the shareholders

(*Malone v. Brincat*, 722 A.2d 5, 10 (Del. 1998)).  Other sets of materials are controlled by

shareholder proponents, who have an independent responsibility to comply with the SEC's proxy

regulations, including ensuring that their materials do not contain false or misleading statements

or material omissions and are updated when necessary so as to remain accurate.  *See* Rule 14a-9.

   An exception to the general rule that shareholders must prepare their own proxy materials

to raise a matter at a company annual meeting is set forth in Rule 14a-8 (17 C.F.R. § 240.14a-8),

the rule at issue in this case.  Established with its current structure in the 1940s and amended on

several occasions subsequently, the Rule provides a channel through which a shareholder owning

a specified stake in the company may submit a proposal for inclusion in the company's proxy

statement—at the company's expense—so long as distinct eligibility and procedural

requirements are met and an exclusion does not apply.  "In all cases, the proposal may be

excluded by the company if it fails to satisfy the rule's procedural requirements or falls within

one of the rule's thirteen substantive categories of proposals that may be excluded."  Rel. No. 34-

56161, 72 Fed. Reg. at 43,490.  Through the decades, the SEC has defined each of these 13

categories with care, seeking to balance the interests of directors and managers (who owe

6

shareholders a fiduciary duty to act in the company's best interests) and the interests of
shareholder proponents (who owe no such duty).

Rule 14a-8 thus has been characterized as providing shareholder proponents with a right
that is "informational" (*Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416, 421 (D.C.
Cir. 1992)), with the exclusions set forth in Rule 14a-8 marking the outer boundaries of that
right.  The exclusion procedures entrust the company's directors and managers rather than
shareholders with the task of determining whether grounds for exclusion exist, with a significant
role for the SEC also:  A company must notify the SEC and the proponent of its intent to exclude
a proposal, and the grounds for doing so.  *See* Rule 14a-8(j) (17 C.F.R. § 240.14a-8(j)).  In
response to a company request, SEC staff may (1) send a "no-action" letter stating that the staff
will not recommend enforcement action against the company if it omits the proposal; (2) send
the company a letter declining to concur in the company's analysis of the grounds for exclusion;
or (3) express no position.  Over the years, SEC no-action letters have come to constitute a
valued source of guidance that companies and shareholders alike may consult to discern whether
a proposal is properly excluded from the company's proxy materials.  Companies for their part
have been careful in exercising their ability to exclude proposals, with "[o]nly about 14 percent
of shareholder proposals [being] omitted."  *Proxy Voting*, *supra* note 2, at 5.

2.      Rule 14a-8 has provided shareholders considerable opportunity to include
proposals in company proxy materials.  Shareholder proposals have become increasingly
common since 2000.  The results of votes on proposals in the 2007 "proxy season," running from
January 1 to June 30, are summarized in a report by RiskMetrics Group (which owns the
shareholder advisory service ISS Governance Services ("ISS")).  Of the 16 shareholder proposals
the report identifies as having received the highest proportion of supporting votes, 13 received in

excess of 50 percent of votes cast.  2007 Postseason Report 7 chart 3 (Oct. 2007),

<http://www.riskmetrics.com/pdf/2007PostSeasonReportFINAL.pdf>.  The topics addressed

during the 2007 season ranged from separation of the roles of chairman and chief executive

officer at CVS Caremark Corporation, to limitations on senior executive retirement plan benefits

at The Goodyear Tire & Rubber Company.  Thus, consistent with the purposes of Rule 14a-8,

shareholders are able to place proposals in company proxy statements, and those proposals often

go on to receive significant support.

      Rule 14a-8, as interpreted by the SEC, has made the company proxy statement a

carefully-structured channel for shareholder proposals that satisfy certain prerequisites, while

preserving the ability of directors and managers, in the course of exercising their fiduciary duties

to the company, to exclude defective proposals.

## ARGUMENT

**A.  Rule 14a-8 Cannot Be Construed To Mandate Inclusion In Company Proxy Materials Of Shareholder Proposals That Would Circumvent And Nullify The Investor Protections Set Forth In Rule 14a-8 And The SEC's Other Proxy Rules.**

      Plaintiff's proposal is irreconcilable with the existing legal regime governing proxy

solicitation and with the sound regulatory choices that regime reflects.  The proposal seeks to

establish a process under which so-called Qualified Proposals would be included in the company

proxy statement virtually automatically, even where inclusion would be inconsistent with the

terms of Rule 14a-8 and the SEC's other proxy rules, all of which constitute long-standing

agency interpretations of Section 14(a) of the Exchange Act.  In general, plaintiff's proposal rests

on the assumption that shareholders can cause a company to carve itself out of the SEC's rules.

That assumption is incorrect.  Proxy rules such as Rule 14a-3, which requires persons who solicit

proxies to disclose extensive information, and Rule 14a-9, which bans false and misleading

statements, are binding legal requirements, not mere guidance or "best practices" that companies and shareholders may displace at their choosing. Rule 14a-8 is a carefully-defined exception to the principle that shareholders seeking to put forth proposals should do so through their own proxy materials that comply with the proxy rules; that exception cannot be construed to swallow itself and the other proxy rules wholesale. Under Rule 14a-8(i)(3)'s provision allowing exclusion of proposals that conflict with the proxy rules, Electronic Arts therefore properly asserted that it was permitted to omit plaintiff's proposal from the company proxy materials.

1.      It is notable as an initial matter that this case is before the Court upon an *inferred* right of action under an SEC rule. Section 14(a) of the Exchange Act does not create any private rights by its terms. Although the Supreme Court has continued to recognize a private right of action for materially misleading statements in proxy materials in violation of Rule 14a-9 (*Sandberg*, 501 U.S. at 1104-05), the Court's recent pronouncements give reason to question whether the SEC's shareholder proposal procedures set forth in Rule 14a-8—which are entirely a creature of agency rulemaking—give rise to a private right of action in *any* circumstance. *See Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not . . . . Agencies may play the sorcerer's apprentice but not the sorcerer himself."). The Supreme Court has applied this same principle to other SEC regulations interpreting the Exchange Act. *See Cent. Bank of Denver, N. A. v. First Interstate Bank of Denver, N. A.,* 511 U.S. 164, 173 (1995) ("the private plaintiff may not bring a [SEC Rule] 10b-5 suit against a defendant for acts not prohibited by the text of [Exchange Act] § 10(b)"); *see also Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 128 S. Ct. 761, 772 (2007) ("In the absence of congressional intent the Judiciary's recognition of an implied private right of action

necessarily extends its authority to embrace a dispute Congress has not assigned it to resolve.")
(internal quotation marks omitted).[4]

Whatever the merits of a shareholder inferring a right of action from Rule 14a-8 in other
contexts, inferring a right to the remedy sought in this case is plainly inappropriate, because the
shareholder is attempting to use Rule 14a-8 to install a new shareholder proposal process that has
no basis in the statute and that, once in place, would nullify the very regulation that plaintiff asks
this Court to "enforce."  *See infra* Part A.2.  Rule 14a-8(i) cannot, on the one hand, be so
important an application of Section 14(a) of the Exchange Act as to warrant a shareholder right
of action to vindicate its purposes in federal court and, on the other hand, be so slim and
insubstantial an articulation of the federal interest in the proxy process that shareholders may
convert it to an escape hatch for in the future avoiding Rule 14a-8(i) as well as other SEC rules
governing proxy solicitation.

2.    The complaint erroneously characterizes plaintiff's proposal as one that would
merely "establish internal rules and guidelines . . . that regulate the extent to which and the ways
in which the company would exercise the discretion provided in Rule 14a-8 to determine which

---

[4]  This Court may dismiss plaintiff's complaint without reaching the question whether an
implied private right of action exists under Section 14(a) for violations of Rule 14a-8(i).  Neither
the Supreme Court nor the Second Circuit has decided the question.  In the course of finding an
implied right of action under Section 14(a) for violations of Rule 14a-4(a)(3) (17 C.F.R.
§ 240.14a-4(a)(3)) and 14a-4(b)(1) (17 C.F.R. § 240.14a-4(b)(1)), which forbid grouping several
matters into one vote in a solicitation, the Second Circuit in *Koppel v. 4987 Corp.*, 167 F.3d 125
(2d Cir. 1999), relied on the reasoning in a District of Columbia Circuit case that found an
implied right for violations of Rule 14a-8(i).  That, however, is not a *holding* by the Second
Circuit on point.  *See id.* at 134-38 (citing *Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d
416 (D.C. Cir. 1992)).  *Koppel* and *Roosevelt* both were decided before the Supreme Court's
most significant articulation of the standard for inferring rights of action for violations of agency
regulations in *Alexander v. Sandoval*, 532 U.S. 275 (2001).  (In *AFSCME v. AIG, Inc.*, 462 F.3d
121, 131 (2d Cir. 2006), the Second Circuit reached the merits of a claim that a shareholder
proposal was improperly excluded from the company proxy without addressing whether
Congress had authorized the shareholder's suit.)

proposals to include in its proxy materials." Compl. ¶ 29. That characterization belies the radical import of plaintiff's proposal, which would enable shareholders to place proposals for by-law amendments in the company proxy materials without being screened for the various defects that the SEC has deemed warrant exclusion under Rule 14a-8. Plaintiff's proposal also would remove the role of directors and managers in determining whether to exclude a proposal from the company's proxy materials, and the role of the SEC in overseeing that process.

The SEC's rule establishes 13 separate grounds for excluding shareholder proposals from the company proxy. Plaintiff's proposal would sweep away *eight* of these, including exclusions for proposals that: concern a personal claim or grievance, insignificant matters, or elections to corporate office; conflict with a board proposal; have been rendered moot; are duplicative of similar proposals in the current year; essentially repeat a proposal from prior years; or address specific dividend amounts. *See* Def.'s 12(b)(6) Mem. [Dkt. No. 5 ] 14-15. Conversely, plaintiff apparently has decided that five of the exclusions the SEC provided for in Rule 14a-8(i) warrant incorporation in his proposal, albeit in somewhat different form. Thus, plaintiff's proposal (Compl. ¶ 18) requires in Paragraph (b) that each proposed by-law amendment be "valid under applicable law." *Cf.* Rule 14a-8(i)(2) (proposal would cause violation of law), (i)(3) (proposal misleads or otherwise contravenes proxy rules), (i)(6) (company lacks power to implement). Paragraph (c) of plaintiff's proposal requires that each proposed by-law amendment be "a proper action for stockholders under state law" (*cf.* Rule 14a-8(i)(1) (similar)), and that it not "deal with a matter relating to the Corporation's ordinary business operations" (*cf.* Rule 14a-8(i)(7) (similar)).

The SEC, however, has assessed the costs and benefits of each of the 13 exclusions in Rule 14a-8(i), and has concluded that *all* 13 exclusions are "necessary or appropriate in the

public interest or for the protection of investors."  15 U.S.C. § 78n(a).  The SEC has consistently

applied these judgments for decades.  *Cf. Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735,

740 (1996) ("[A]gency interpretations that are of long standing come before us with a certain

credential of reasonableness, since it is rare that error would long persist.").

Thus, for example, Rule 14a-8(i)(12) (17 C.F.R. § 240.14a-8(i)(12)) excludes proposals

similar to a proposal submitted previously that failed to receive a specified minimum percentage

of votes.  That exclusion reflects the SEC's conclusion that it is improper "to present essentially

the same proposal to an issuer's security holders year-after-year, even though the proposal has

not attracted the support required by the rule."  Adoption of Amendments Relating to Proposals

by Security Holders, Rel. No. 34-12999, 41 Fed. Reg. 52,994, 52,999 (Nov. 22, 1976).  Similar

policy judgments and the sensitive weighing of risks and benefits by the SEC underlie the other

exclusions.  For example, the exclusion regarding specific dividend amounts exists because "the

Commission was concerned over the possibility that several proponents might independently

submit to an issuer proposals asking that differing amounts of dividends be paid."  *Id.*, 41 Fed.

Reg. at 52,999.

The Rule 14a-8(i) exclusion for personal claims or grievances exists "because the

Commission does not believe an issuer's proxy materials are a proper forum for airing personal

claims or grievances."  Rel. No. 34-129999, 41 Fed. Reg. 52,997.  Disregarding the danger the

SEC recognized—that a shareholder proponent might obtain approval for a proposal that furthers

an undisclosed interest not common to the shareholders at large—plaintiff's proposal would

compel a company to include in its proxy materials a proposed by-law amendment whose sole

purpose and effect was to achieve a benefit for the proponent only, and not for the shareholders

at large.  (The shareholder proponents also would have skirted Rule 14a-3, which, as noted,

requires a shareholder that prepares and distributes its own proxy materials to provide each

person solicited with the information specified in the SEC's Schedule 14A—including a

description of any substantial *direct or indirect* financial interest or other interest that the

proponent *and other participants* in the solicitation have in the proposal.)

The harm inflicted by proposals designed to further personal claims and undisclosed

interests is not merely theoretical but real in the current era of activism by, among others, hedge

funds and certain institutional investors.  Hedge funds often have shorter investment horizons

than long-term investors, and they sometimes structure their securities holdings so as to earn

higher returns when a company's share price decreases, which leads their interests to diverge

from those of other shareholders.  *See, e.g.*, SEC, *Implications of the Growth of Hedge Funds* 42

(Sept. 2003), <http://www.sec.gov/news/studies/hedgefunds0903.pdf> (discussing hedge funds'

short-selling strategies).  Among institutional investors, "[t]hose . . . most inclined to be activist

investors are associated with state governments and labor unions, and often appear to be driven

by concerns other than a desire to increase the economic performance of the companies in which

they invest."  Leo E. Strine, Jr., *A Traditionalist Response to Bebchuk's Solution for Improving

Corporate America*, 119 Harv. L. Rev. 1759, 1765 (2006).  Allowing such shareholders to use

company assets to campaign for by-law amendments, without requiring them to provide the full

disclosures required when they solicit using their own proxy material, disserves investors at

large.

The weightiness of the SEC legal and policy judgments underlying the Rule 14a-8(i)

exclusions is in no way lessened by the fact that companies have the *discretion* to include

proposals that are nonetheless excludable under the rule.  The discretionary nature of the rule

simply recognizes that managers and directors must be afforded some flexibility in evaluating

whether certain shareholder proposals should be included in the company's proxy materials, consistent with their state-law imposed fiduciary responsibility to act in the best interest of all shareholders. *Cf. CA, Inc. v. AFSCME Employees Pension Plan*, No. 329 (slip op. 19) (Del. July 17, 2008) (en banc) (state law "invalidate[s] contracts that would require a board to act or not act in such a fashion that would limit the exercise of their fiduciary duties.").

For those reasons, a shareholder such as plaintiff who seeks to establish an alternative channel for shareholder use of the company proxy materials is not entitled to a court order licensing him to pick and choose among the SEC exclusions, as though they were part of an à la carte menu rather than a regulation with the force of law. Professor Bebchuk may have lively policy disagreements with the SEC about the optimal structure of Rule 14a-8 and the desirability of some of the exclusions it contains,[5] but it is a bedrock principle of administrative law that an agency, not a court, properly resolves such disagreements. "The responsibilities for assessing the wisdom of such policy choices and resolving the struggle between competing views of the public interest are not judicial ones." *Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837, 866 (1984). When a court examines a "comprehensive regulatory program"—such as the proxy rules at issue here—the case against "judicial innovation" is particularly strong. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831-32 (2003).

3.    The logical consequence of plaintiff's claim in this case is that shareholders at every public company may establish their own separate and unique system for availing themselves of the company's proxy materials—in lieu of filing their own proxy materials (at

---

[5] Professor Bebchuk has testified before Congress that, in his opinion, "[i]t would be desirable to dismantle existing impediments to shareholders' ability to replace directors and to shape companies' corporate governance arrangements." *Empowering Shareholders On Executive Compensation*, Hearing Before the H. Comm. on Financial Services, 110th Cong. 73 (2007).

their own expense) and bearing the responsibility for satisfying the disclosure and other requirements imposed by the SEC proxy regulations.  In other words, nothing in the complaint suggests that plaintiff's omission of eight of the 13 Rule 14a-8 exclusions is the only permissible framework under his theory of the proxy rules;  there is no limiting principle that would foreclose shareholders from voting to approve different menus of exclusions at different companies.  The unitary Rule 14a-8 process that the SEC authoritatively administers for the benefit of all issuers would dissolve into a company-by-company customization of proxy solicitation procedures.

The SEC previously considered and rejected just such a customization approach.  In 1982, it proposed rules that would have permitted a company and its shareholders to adopt a company-specific alternative procedure to govern the shareholder proposal process.  *See* Proposed Amendments to Rule 14a-8 Under the Securities Exchange Act of 1934 Relating to Proposals by Security Holders, Rel. No. 34-19135, 47 Fed. Reg. 47,420 (Oct. 14, 1982).  In 1983, the Commission declined to adopt the proposed regime.  *See* Amendments to Rule 14a-8 Under the Securities Exchange Act of 1934 Relating to Proposals by Security Holders, Rel. No. 34-20091, 48 Fed. Reg. 38,218 (Aug. 16, 1983).  The SEC noted the many comments it received criticizing such a company-by-company approach, which would "create serious problems of administration as there would be no uniformity or consistency in determining the inclusion of security holder proposals.  Exacerbating the problem generated by provisions individual to each issuer would be the effect of the fifty state judicial systems administering the process."  *Id.* at 38,218.

Notwithstanding the SEC's policy judgment on the point, plaintiff here seeks a *judicial* order under Rule 14a-8—a carefully-crafted exception to the normal proxy solicitation rules—to

wrest control of proxy regulation from the federal agency responsible for interpreting and enforcing the federal securities law regime.  But there obviously is no warrant for "enforcing" Rule 14a-8 so as to effectively nullify itself and the judgments it embodies, and to serve as the vehicle for radically altering the proxy solicitation landscape.

Courts do not "imput[e] to Congress a purpose to paralyze with one hand what it sought to promote with the other" (*Am. Paper Inst., Inc. v. Am. Elec. Power Serv. Corp.*, 461 U.S. 402, 421 (1983) (internal quotation marks omitted)), or presume that Congress "hide[s] elephants in mouseholes" (*Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001)).  In this case, interpreting Rule 14a-8 to require inclusion in the company proxy materials of a proposal that would render Rule 14a-8 a nullity would work just such a reversal.  That interpretation cannot be correct.

**B.    Plaintiff's Proposal Is Impermissibly Vague And Therefore Is Properly Excluded.**

Electronic Arts' exclusion of the proposal was proper and plaintiff's complaint should be dismissed for the additional reason that (among other grounds) plaintiff's proposal is silent and ambiguous with regard to crucial aspects of its operation.  Those silences and ambiguities render the proposal vague and misleading under Rule 14a-8(i)(3).[6]

By its terms Rule 14a-8(i)(3) allows exclusion when "the proposal or supporting statement is contrary to any of the [SEC]'s proxy rules, including § 240.14a-9, which prohibits materially false or misleading statements in proxy soliciting materials."  17 C.F.R. § 240.14a-8(i)(3).  For decades it has been the SEC's judgment that, under this provision, exclusion from

---

[6] The Chamber concurs with the grounds for exclusion identified in Electronic Arts' motion to dismiss, including its argument under Rule 14a-8(i)(8).  Def.'s 12(b)(6) Mem. [Dkt. No. 5 ] 15-18.

the company's proxy materials is proper not only where the matter submitted is false or

misleading to the degree usually understood as creating liability for securities fraud, but *also*

where the matter is "so *vague and indefinite* as to make it impossible for either the board of

directors or the stockholders at large to comprehend precisely what the proposal would entail."

*Dyer v. SEC*, 287 F.2d 773, 781 (8th Cir. 1961) (emphasis added).  For purposes of Rule 14a-

8(i)(3), "[s]hareholders are entitled to know *precisely* the breadth of the proposal on which they

are asked to vote."  *NYC Employees' Ret. Sys. v. Brunswick Corp.*, 789 F. Supp. 144, 146

(S.D.N.Y. 1992) (emphasis added).[7]

Asking Electronic Arts' shareholders to vote on plaintiff's proposal is tantamount to

asking them to take the antecedent step of guessing for themselves the answers to at least these

three questions: (1) What proposals are "Qualified Proposals"? (2) How should the company

respond when it learns a proponent of a "Qualified Proposal" ceases to hold the requisite

ownership stake in the company? (3) What should the company do in response to a "Qualified

Proposal" when reasonable minds disagree about the proposal's lawfulness?  That plaintiff's

proposal requires such guessing demonstrates it to be fatally imprecise under Rule 14a-8(i)(3).

1.      Plaintiff's proposal does not define in precise terms the class of shareholder

proposals that would be subject to the alternative route into the company proxy materials that

plaintiff's proposal would create.  One of the requirements for a "Qualified Proposal" under

_____

[7] *See also* Proposed Amendments to Rule 14a-8 Under the Securities Exchange Act of 1934
Relating to Proposals by Security Holders, Rel. No. 34-19135, 47 Fed. Reg. 47,420, 47,426 (Oct.
14, 1982) (exclusion of shareholder proposal that raises Rule 14a-9 concern is proper "where it is
clear that the proposal and supporting statement in their entirety are false or misleading or
otherwise so vague and ambiguous that the issuer and its security holders would not be able to
determine what action the proposal is contemplating.").   Such an SEC interpretation of an
ambiguity in its own proxy regulations is entitled to particular deference under *Bowles v.
Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945).  *See, e.g.*, *Auer v. Robbins*, 519 U.S. 452,
461 (1997).

plaintiff's proposal is that, "[i]f adopted, the proposal would effect only an amendment to the Corporation's Bylaws" (Proposal ¶ (b)), but as framed that requirement falls short of specifying that, to be a "Qualified Proposal," a proposal must be *expressly* cast as a proposed by-law amendment and nothing else.  The word "effect" is the source of the ambiguity.  For example, if—as often occurs—a company received a shareholder proposal that required the company to "take all steps necessary to" achieve a certain result, those "necessary" steps might include recommending to shareholders an amendment to the certificate of incorporation, or adopting a by-law amendment, or adopting a written corporate policy.  Shareholders asked to vote on plaintiff's proposal will not know whether, in such a situation, the proposal at issue would properly be classified as a "Qualified Proposal" (because one of the necessary steps may be a by-law amendment), or as something else, because the "all steps necessary" wording does not explicitly limit itself to seeking a by-law amendment.  These distinctions may seem clear to plaintiff, a professor of corporate law, but they will not to the average shareholder.

2.    Under plaintiff's proposal, as under Rule 14a-8(b) (17 C.F.R. § 240.14a-8(b)), the shareholder proponent need only provide a written expression of intent to hold a specified ownership stake "through the date of the Corporation's annual meeting" at which the shareholder proponent's proposal is scheduled to be put to a vote.  Proposal ¶ (a)(ii).  In the time between submission of the proposed by-law amendment and the actual vote, a shareholder proponent may reduce its stake below the five-percent requirement contained in plaintiff's proposal— notwithstanding the prior notice of intent not do so.  That would leave the company facing a by-law amendment proposed by a person with little or no continuing stake in the company.  Plaintiff's proposal leaves shareholders to guess what recourse the company would have in that situation.  Although Rule 14a-8(b) has a similar notice-of-intent provision, the SEC's no-action

guidance interpreting the rule makes crystal clear that, when a company learns the shareholder proponent has sold its shares and thus has not abided by the notice of intent, the proposal can be excluded.  *See* Fidelity Magellan Fund, SEC No-Action Letter (Mar. 10, 2005).  In contrast, plaintiff's proposal gives no guidance on the point at all.

3.      Plaintiff's proposal requires that each proposed by-law amendment, "[i]f adopted . . . would be valid under applicable law" (Proposal ¶ (b)), and "is a proper action for stockholders under state law" (*id.* ¶ (c)).  Plaintiff's proposal fails to account for the fact that shareholder proponents and the company will sometimes disagree about the legal validity of a proposed by-law amendment.  Perhaps the most important example is disagreement over the application of Rule 14a-9, which prohibits misleading statements in proxy solicitations:  An assertion that the shareholder proponent considers correct may be one that the company considers to be false or misleading and therefore a violation of Rule 14a-9.  When a shareholder proponent and the company confront such a disagreement under the Rule 14a-8 process, SEC no-action relief may provide valuable guidance.  Where the disagreement is about application of the federal securities laws or the SEC's own regulations (as in the case of disagreement over how Rule 14a-9 applies to the proposed by-law), the SEC's answer will command varying degrees of deference in subsequent litigation.  Or, if the disagreement is over a matter of Delaware law, the SEC may certify the question to the Delaware Supreme Court.  *See* Del. Sup. Ct. R. 41; *see also CA, Inc.* (slip op. at 2 n.1) (noting that decision resolved two such questions in SEC's first use of certification procedure).

Under plaintiff's proposal, by contrast, every legally-indeterminate by-law proposed would place directors in a dilemma:  On one hand, the proposal would seem to obligate the directors to include the proposed by-law in the company proxy statement; on the other hand, the

directors' fiduciary duties would seem to obligate them not to use the company's resources to

facilitate the adoption of an unlawful by-law.[8]  The Delaware courts will not be available to

resolve the matter, because—outside of the SEC certification process described above—they will

not rule on the validity of proposed by-laws before enactment.  *Bebchuk v. CA, Inc.*, 902 A.2d

737, 738 (Del. Ch. 2006).  With guidance from the SEC also unavailable, the only certainty

under plaintiff's proposal will be increased litigation and the associated expense for the company

and its shareholders.

**C.     The Precatory Character Of Plaintiff's Proposal Does Not Cure Its
         Deficiencies.**

Paragraph 32 of the complaint alleges that the effect of plaintiff's proposal is to "merely

urge the Company's directors to establish certain rules governing how the Company would

exercise the discretion provided to it under" Rule 14a-8.  To the extent plaintiff intends to

suggest that the precatory or non-binding nature of a proposal somehow cures it from a

deficiency that otherwise warrants exclusion under Rule 14a-8, he is mistaken.  When a proposal

calls for action that conflicts with existing law, as plaintiff's does, its non-binding nature is

immaterial.  Rule 14a-8 defines shareholder proposals to include "recommendation[s]" for

company or board action, and the Rule 14a-8 criteria and exclusions discussed above and in

defendant's brief apply equally to binding and non-binding resolutions.  This is appropriate,

since shareholder proposals couched in precatory language in fact can have significant

consequences.

---

[8] Plaintiff's proposal recognizes, in its opening sentence, that directors must be able to
decide not to present *his* proposal for a shareholder vote if doing so would violate their fiduciary
duties, but in effect it fails to make a similar provision for future proposals, if this one is enacted.

In light of the fiduciary obligations they owe all shareholders, company officers and directors give full attention to all shareholder proposals as a matter of course.  "[B]oards treat shareholder proposals that receive a large vote or pass as strongly indicating shareholder preferences and often act on them."  *Proxy Voting*, *supra* note 2, at 4.  Companies often meet with the proponents of precatory proposals to discuss their concerns.  Indeed, the Investment Company Institute reports that "25 percent of shareholder proposals are withdrawn by their sponsors before coming to a vote, often because the company has agreed to make the requested changes."  *Id.* at 5.

If enacted, precatory proposals can, as a practical matter, function as mandatory directives.  This results in substantial part from the policy of many institutional investors—who collectively account for a large portion of outstanding shares—to follow the recommendations of proxy advisors (such as ISS) in determining how to vote.  These advisory services use guidelines that typically take into account whether companies have implemented non-binding proposals that shareholders previously approved.  For example, under its voting guidelines, ISS will recommend a "withhold" or "against" vote with respect to directors up for re-election where a company has received a majority vote on a shareholder proposal and has chosen not to implement it, or the board has implemented in a way that diverges from the proposal.  As ISS summarized its policy recently:  "Vote AGAINST or WITHHOLD from all nominees of the board of directors . . . if . . . The Board failed to act on a shareholder proposal" that "received approval by a majority of the shares outstanding the previous year" or that "received approval of the majority of shares cast for the previous two consecutive years."  ISS Governance Servs., 2008 U.S. Proxy Voting Guidelines: Concise Summary 2 (Dec. 21, 2007), <http://www.riskmetrics.com/pdf/2008_US_ConciseSummaryGuidelines.pdf>.  As ISS intends,

21

this instruction has the consequence of causing boards to treat precatory proposals as binding in practical effect.

In short, plaintiff's proposal may be framed in precatory terms, but it remains fundamentally at odds with the SEC regulatory framework on which plaintiff purports to rely. Electronic Arts correctly identified grounds for excluding it.

## CONCLUSION

Defendant's motion to dismiss should be granted.

DATED:  July 18, 2008

GIBSON, DUNN & CRUTCHER LLP

*[signature]*

OF COUNSEL:
NATIONAL CHAMBER
LITIGATION CENTER, Inc.
Robin S. Conrad
Amar D. Sarwal
1615 H Street, N.W.
Washington, D.C. 20062
Telephone:  (202) 463-5337

Eugene Scalia*
Indraneel Sur*
1050 Connecticut Avenue, N.W., Suite 300
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile:  (202) 530-9695
escalia@gibsondunn.com
isur@gibsondunn.com
*Admitted pro hac vice*

*Counsel for Amicus Curiae Chamber of Commerce of the United States of America*

## CERTIFICATE OF SERVICE

I, Indraneel Sur, hereby certify, under penalty of perjury pursuant to 28 U.S.C. § 1746, that on this 18th day of July 2008, I served a true and correct copy of the foregoing Brief For The Chamber Of Commerce Of The United States Of America As *Amicus Curiae* Supporting Defendant, by electronic mail and by first class mail, postage prepaid, upon the following counsel of record:

> Jay W. Eisenhofer
> Michael J. Barry
> Grant & Eisenhofer P.A.
> 1201 North Market Street
> Wilmington, DE 19801

> Jonathan Rosenberg
> O'Melveny & Myers LLP
> 7 Times Square
> New York, NY 10036

_____

Indraneel Sur